HAZOURI, J.
Willems Calixte appeals his convictions on two counts of robbery with a firearm and one count of kidnapping with a firearm in his possession. We reverse and remand for a new trial.
*571 Calixte raises four points on appeal: (1) the trial court abused its discretion in permitting the investigating detective to testify that stolen property is rarely recovered and that there is often a discrepancy between the defendant’s appearance and the description of the perpetrator given by crime victims; (2) the trial court erred in denying Calixte’s motion for judgment of acquittal for kidnapping; (3) the trial court erred in denying Calixte’s motion to recuse the trial judge; and (4) the trial court erred in denying Calixte’s motion for new trial based on ineffective assistance of counsel in failing to adequately investigate Calixte’s alibi defense. We affirm without comment as to points two, three and four. We find merit in point one and reverse and remand for a new trial.
The sole evidence against Calixte was his positive identification as the perpetrator by the two victims, Ron and Warren Winston. There was no other evidence, physical or otherwise, that Calixte was involved in the robbery. None of the articles taken from the Winstons were ever recovered. The Winstons had described the robber as standing about 6 feet tall, with a muscular build. Calixte is 5 feet 7 inches tall and weighs 150 pounds.
Calixte became a suspect when a friend of the Winstons showed them a news article describing an attempted robbery in which two of the four perpetrators were killed by the intended victim. Two others, including Calixte, survived. In the news article there were four photographs. The Winstons noted that one of the photographs looked familiar and concluded that Calixte, who was pictured in the news article, was the person who robbed them. After seeing this picture, the Winstons prepared a police sketch and subsequently picked Calixte’s picture from a photo lineup. At trial, although the Winstons positively identified Calixte as the perpetrator, they conceded that he looked different from the way the robber looked at the time of the crime: his skin was lighter, he was wearing glasses, and he had lost weight. There was also a discrepancy in the height.
The investigating detective testified over objection that based on his training and experience in eight years in the robbery unit, a victim’s property is rarely recovered unless the perpetrator is caught immediately after the incident occurred.[1] In an attempt to explain the discrepancy in the description given by the victims to the investigating detective, the detective was permitted to testify over objection that such discrepancies are normal and it often occurs in the cases he investigates, particularly in reference to descriptions of height because the person who is being robbed has a traumatic experience and “the height is not going to be exactly what the perpetrator is and very rarely in the case they get it exactly on the nose.”
Calixte asserts the trial court abused its discretion in admitting the above referenced testimony from the investigating detective and the error was harmful, entitling him to a new trial. We agree.
In Williams v. State, 619 So.2d 1044 (Fla. 4th DCA 1993), the defendant was charged with an armed robbery. Williams’s mother testified at trial that he was home at the time the crime occurred. Defense counsel called the deputy who investigated the case to testify in order to point out inconsistencies in the yictims’ descriptions of the assailants at the time of trial as compared to their descriptions immediately after the incident. The cross-examination by the state went as follows:
*572 [STATE]. Sir, it’s not uncommon for victims of a crime like this to remember things, evidence later?
[DEFENSE]. Objection as to relevancy. [COURT], Overruled. Well. Maybe you want to qualify it before I let you go into that area.
[STATE]. Sir, you have been in law enforcement 20 years—
[DEFENSE]. Excuse me. I object to what other victims in other crimes experienced. It has no' relevancy to this case. These victims were here. Other victims are not here.
[STATE]. It’s directly relevant on their ability to give a description.
[COURT], I’ll overrule the objection. [STATE]. You have been a law enforcement officer 20 years you said?
A. Correct.
Q. You have come in contact with a lot of armed robberies?
A. Yes.
Q. And victims of crimes such as this and violence such as this?
A. That’s correct.
Q. As such you have become aware of descriptions that victims give at the scene, correct?
A. That’s correct.
Q. There may be later descriptions or other evidence that they might remember, correct?
A. That’s correct.
Q. Isn’t it true it’s not unusual for them to remember additional evidence as time goes on?
A. That’s true.
Q. Different than what they might remember at the scene—
A. Yes.
Q.-when they are still affected by the crime?
A. That is true.
Id at 1046. This court held that the trial court “erred not only because this evidence is irrelevant, but also because it amounted to an improper comment on the reliability of eyewitness identification.” Id
In Cyprian v. State, 661 So.2d 929 (Fla. 4th DCA 1995), the defendant was charged with robbery and the state’s case relied upon the victim’s identification of her attacker. At the time of the robbery, the victim reported that she was “unsure” if she could identify her attacker but gave a general description. However, when the detective who investigated the crime showed her a photo lineup, she identified the defendant and was 100% sure. When questioning the detective, the state tried to elicit testimony as to whether it was common for victims in robberies to be unable to identify their attackers at first but later identify them with certainty. The colloquy was:
Q. Now referring to the statement that Counsel-I mean, that you just indicated to us previously about she would probably be unsure to identify an individual, is it unusual after an event like this to give a description and say that I many [sic] not be able to identify an individual or they may be unable to identify the individual?
[DEFENSE COUNSEL]: Your Honor, I object to this. It is clearly irrelevant, plus out of the witness’ scope and calls for speculation.
[[Image here]]
THE COURT: I will sustain the objection as phrased.
BY [PROSECUTOR]: Have you investigated robberies and offenses against persons before this case?
A. Yes.
Q. Okay. And would it be safe to say that a lot of those cases people were *573 upset, frightened people made contact with—
[DEFENSE COUNSEL]: Your Honor, I will object. That is irrelevant, what happens in other cases.
THE COURT: I will sustain the objection.
[[Image here]]
[PROSECUTOR]: Let me ask you this, is it unusual, based upon your police experience, which is how many years? A. Seven and a half, sir.
Q. Based upon your police experience, would someone say initially they may not be able to identify someone—
[DEFENSE COUNSEL]: Your Honor, I object to this as calling for information not relevant to this case and calls for speculation.
THE COURT: Overrule your objection. BY [PROSECUTOR]: Is it unusual for someone to say that they may not be able to identify someone that in the initial incident and then identify someone in a lineup, show up or photographic lineup?
[DEFENSE COUNSEL]: I object again. That’s clearly-It’s the same question that was just objected to that was just sustained.
THE COURT: I’ll overrule the objection.
[[Image here]]
A. Not-It’s not unusual for somebody to say that that’s a possibility.
Q. Has it happened in your experience, that same scenario?
A. Yes.
Id. at 929-30. In reversing and remanding for a new trial, this court held: “[W]e find that the questions and answers elicited of the investigating officer during cross-examination by the state in the case at bar are virtually identical to those in Williams and thus require reversal.” Id. at 930.
Because the identification of Ca-lixte was the crucial issue at trial and the testimony of the investigating detective was directly related to this issue, we find that the trial court erred in permitting this testimony and we reverse and remand for a new trial.
STONE and GROSS, JJ., concur.

. Calixte was apprehended ten days after the robbery occurred.